UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

STEVE TUNGET,
    Plaintiff,

v.                                                                                          08-3089

RANDALL SMITH, ANITA PANYE,
BRIAN THOMAS and Unknown
Program Administrator,
    Defendants.

Memorandum Opinion and Order

Before the court are the defendants, Anderson Freeman (sued as Unknown Program Administrator) and Brian Thomas's summary judgment motion brought pursuant to Federal Rule of Civil Procedure Rule 56 [35] and the plaintiff's response [41].

Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." See Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc*., 176 F.3d 390, 390 (7th Cir. 1999). Failure by the

non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## Background

Steve Tunget is civilly committed to the custody of the Illinois Department of Human Services ("Department") pursuant to the Sexually Violent Persons Commitment Act, 725 Ill. Comp. Stat. Ann. 207/1 et seq. (West 2008) ("SVP Act"). The SVP Act effectuates the indefinite civil detention of individuals who have been convicted of a sexually violent offense and who have been found to be "dangerous because [the person] suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence" again. 725 ILCS 207/5(f). In this civil rights lawsuit, Tunget challenges the determination of his clinical treatment team that it was clinically contraindicated for him to retain photographs of his minor stepdaughter and for his minor stepdaughter to visit him because she was similar in age to his victims.

The defendants assert that Anderson Freeman, the deputy director for forensic services, nor Brian Thomas, the assistant program director, made the decision to terminate the visitation rights of Tunget's stepdaughter or to confiscate photographs of Tunget's stepdaughter. Nevertheless, Tunget seeks to hold Freeman and Thomas liable for refusing to uphold Tunget's grievance seeking reversal of the clinical treatment team's decision. Defendants move for summary judgment on the following grounds. First, Defendants Freeman and Thomas cannot be held liable because Tunget does not have a constitutional right to have his grievances upheld. Second, Defendants Freeman and Thomas are entitled to qualified immunity.

## Undisputed Material Facts

1. Tunget is civilly committed at the Rushville Treatment & Detention Facility ("Rushville Facility") pursuant to the SVP Act. (Defs.' Ex. A; Thomas Aff., ¶ 5.)
2. Defendant Thomas is employed by the Department as the assistant program director at the Rushville Facility. (Defs.' Ex. A; Thomas Aff., ¶ 1.)
3. Defendant Thomas assists in the overall operations of the Rushville Facility, including fiscal management, personnel, security, and the delivery of programs and services to residents. Defendant Thomas is also responsible for the operation of the rehabilitation department, business office, and engineering at the Rushville Facility. (Defs.' Ex. A; Thomas Aff., ¶ 1.)
4. Defendant Freeman is employed by the Department as the deputy director for forensic services. (Defs.' Ex. B; Freeman Aff., ¶ 1.)

5. Defendant Freeman provides oversight for six state operated forensic inpatient programs servicing adults and juveniles, including the sexually violent persons program at the Rushville Facility. (Defs.' Ex. B; Freeman Aff., ¶ 1.)
6. The treatment program offered at the Rushville Facility is designed and supervised by staff who have backgrounds in psychology and clinical social work and who have specialized in the development of treatment programs for sexual offenders. (Defs.' Ex. B; Freeman Aff., ¶ 2.)
7. All important decisions about residents' treatment are made by treatment teams comprised of clinically qualified staff. (Defs.' Ex. B; Freeman Aff., ¶ 2.)
8. Minor children (those under age 18) must be approved by the treatment team before being allowed to visit residents at the Rushville Facility. (Defs.' Ex. A; Thomas Aff., ¶ 2.)
9. Residents are advised to consult their primary therapist for information regarding the procedures necessary for minor visitation approval. (Defs.' Ex. A; Thomas Aff., ¶ 2.)
10. The security director approves or denies visitor requests based on the recommendations of the resident's primary therapist. (Defs.' Ex. A; Thomas Aff., ¶ 3.)
11. On May 21, 2009, Program Director Larry J. Phillips authorized a photo policy, under which residents will be allowed to possess pictures and drawings that meet the following criteria: (i) the number of items does not exceed property limits; (ii) the items are not displayed in unauthorized places; (iii) the items do not fall into the category of pornographic material; (iv) the items may not be of prior victims or of people who fit the resident's victim profile. (Defs.' Ex. A; Thomas Aff., ¶ 4.)
12. Pictures and drawings that do not meet the criteria set forth above will be confiscated, and the resident will be given the choice to get rid of the items or mail them to an authorized individual. (Defs.' Ex. A; Thomas Aff., ¶ 4.)
13. Pictures that are of questionable content or which present possible clinical concerns may be confiscated by security staff for review by the treatment team. (Defs.' Ex. A; Thomas Aff., ¶ 4.)
14. After review, the resident's treatment team will respond in one of three ways. These include: (i) approved – no clinical concerns; (ii) approved, but not recommended – There are some clinical concerns; however staff does not have enough information to deny the item. Approved pictures will be stamped on the back as either "approved" or "approved, but not recommended" and returned to the resident. Once a photo is marked as approved, it should not need to be re-confiscated in future shakedowns; and (iii) denied – deemed to be clinically contraindicated. (Defs.' Ex. A; Thomas Aff., ¶ 4.)
15. On or about January 22, 2008, Tunget submitted a grievance in which he complained that certain photographs of his stepdaughter had been confiscated and that his stepdaughter was no longer approved to visit him at the Rushville Facility. (Defs.' Ex. A; Thomas Aff., ¶ 5.)
16. On February 26, 2008, Defendant Thomas received the recommendations of the grievance examiner related to Tunget's January 22, 2008 grievance. (Defs.' Ex. A; Thomas Aff., ¶ 5.)
17. Defendant Thomas upheld the grievance examiner's recommendation that Tunget's grievance be denied because Tunget's clinical treatment team determined that it was clinically contraindicated for him to retain photographs of his stepdaughter and for his

stepdaughter to visit him because she was similar in age to his victims. (Defs.' Ex. A; Thomas Aff., ¶ 5.)

18. Defendant Thomas's decision to deny Mr. Tunget's January 22, 2008 grievance was based solely on the treatment decisions of clinically qualified staff. (Defs.' Ex. A; Thomas Aff., ¶ 5.)
19. On or about March 14, 2008, Defendant Freeman received Tunget's appeal of the denial of his January 22, 2008 grievance. (Defs.' Ex. B; Freeman Aff., ¶ 3.)
20. Defendant Freeman concurred with the denial of Tunget's grievance because Tunget's clinical treatment team determined that it was clinically contraindicated for him to retain photographs of his stepdaughter and for his stepdaughter to visit him because she was similar in age to his victims. (Defs.' Ex. B; Freeman Aff., ¶ 3.)
21. Defendant Freeman's decision to concur with the denial of Tunget's January 22, 2008 grievance was based solely on the treatment decisions of clinically qualified staff. (Defs.' Ex. B; Freeman Aff., ¶ 3.)
22. Defendants Freeman and Thomas did not make the decision to terminate the visitation rights of Tunget's stepdaughter or to confiscate photographs of Tunget's stepdaughter. (Defs.' Ex. A; Thomas Aff., ¶ 5; Defs.' Ex. B; Freeman Aff., ¶ 3.)

> First Tunget has no constitutional right to have his resident grievances upheld. Tunget seeks to hold Defendants Freeman and Thomas liable based only on their denial of his January 22, 2008 grievance, in which Tunget complained that certain photographs of his stepdaughter had been confiscated and that his stepdaughter was no longer approved to visit him at the Rushville Facility. It is well-settled that a plaintiff cannot state a constitutional claim for the denial of a grievance. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Seventh Circuit has recently reiterated that a plaintiff cannot state a cause of action for the denial of a grievance:
> Finally, a brief word about George's claims against the defendants who handled his administrative protests concerning the events covered by the complaint. * * * Doubtless these persons would be eligible for qualified immunity, but we need not reach that question. George's argument on the merits is that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself. That proposition would not help him if it were correct, for he has lost on all of his underlying constitutional theories. But it is not correct.
> Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not. *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (citations omitted). Indeed, the "contention that any public employee who knows (or

> should know) about a wrong must do something to fix it is just an
> effort to evade, by indirection, [the] rule that public employees are
> responsible for their own misdeeds but not for anyone else's.
> *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009); *see also*
> *Brewer v. Ray*, 2005 WL 1532599, *2 (W.D. Wis. 2005).

Defendants Freeman and Thomas cannot be held liable for denying Tunget's grievance seeking reversal of his clinical treatment team's determination that it was clinically contraindicated for him to retain photographs of his minor stepdaughter and for his minor stepdaughter to visit him. Defendants Freeman and Thomas did not make the decision to terminate the visitation rights of Tunget's stepdaughter or to confiscate photographs of Tunget's stepdaughter. (Undisputed Material Fact No. 22.) To the contrary, that decision was left entirely to clinically qualified staff. Because Defendants Freeman and Thomas did not play any role beyond denying Tunget's grievance, they are entitled to summary judgment in this matter.

It is therefore ordered:

1. The defendants, Anderson Freeman (sued as Unknown Program Administrator) and Brian Thomas's motion for summary judgment [35] is allowed. The clerk of the court is directed to terminate Freeman and Thomas as defendants in this case. **At the close of this case,** the clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56. The parties are to bear their own costs.
2. If the plaintiff wishes to appeal this order, he must file a notice of appeal with this court **within 30 days of the entry of judgment**. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).

Enter this 25th day of February 2010.

<u>s\Harold A. Baker</u>

_____
Harold A. Baker
United States District Judge