UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

STEVE TUNGET,
    Plaintiff,

v.        08-3089

RANDALL SMITH, ANITA PANYE,
BRIAN THOMAS and Unknown
Program Administrator,
    Defendants.

## Memorandum Opinion and Order

Before the court are the defendants' summary judgment motion [39] and the plaintiff's response[1] [42].

### Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If

---

[1]First the plaintiff argues that the defendants' summary judgment motion should be denied because it was untimely. The dispositive motion deadline was July 16, 2009. Defendants filed a timely, unopposed motion for extension of time on July 16, 2009. The motion for extension of time, which was unopposed by the plaintiff, was granted. Therefore, the plaintiff's argument has no merit.

1

[the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc.*, 176 F.3d 390, 390 (7th Cir. 1999). Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

Background

Plaintiff has been civilly committed to the custody of the Illinois Department of Human Services (..DHS..) pursuant to the Illinois Sexually Violent Persons Commitment Act (725 ILCS 207/1 et seq.) (the ..SVP Act..). Plaintiff alleges that various DHS Defendants and the Liberty Defendants Randall Smith and Anita Payne, violated his constitutional rights by confiscating certain photographs depicting a minor child and that Defendants precluded him from having visitations with the minor. Given the minor..s status, the minor, ..T.H..., will not be referred to by her name. Smith and Payne argue that they are entitled to summary judgment because the confiscation of the photographs in question and denial of visitation privileges falls within accepted professional judgment as defined by *Youngberg v. Romeo*, 457 U.S. 307 (1982) and subsequent cases applying the professional judgment standard to cases involving civilly committed ..sexually violent persons... Alternatively, Defendant Smith argues that he is entitled to summary judgment because Defendant Payne (rather than he), as his supervisor, determined that the photographs should be confiscated and the visitor removed from the approved visitor list. Last, Smith and Payne argue that they are entitled to qualified immunity.

Undisputed Material Facts[2]

1. Defendant Anita Payne is a Licensed Clinical Social Worker employed by Liberty Healthcare Corporation (..LHC..) who has been employed by LHC at the DHS operated Rushville Treatment and Detention Facility (the ..Rushville TDF..) since August of 2006.

---

[2]Exhibit can be found attached to Defendants' SMJ [39].

Prior to this date, she was employed for approximately a year and half at the State of Missouri..s treatment and detention facility for sexually violent persons. *See* Payne Affidavit ¶ 1.
2. LHC is a contractor with the Illinois Department of Human Services ....DHS..). Pursuant to annual contracts, LHC provides sex offender treatment to ..sexually violent persons.. (..SVPs..) civilly detained or committed by DHS pursuant to the Illinois Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq.*) (the ..SVP Act..) at the Rushville TDF. See Payne Affidavit ¶ 2.
3. Defendant Payne is currently employed by LHC as a "Team Leader." As a Team Leader, she supervises an assigned group of Clinical Therapists. A description for the position of Team Leader is attached to Defendant Payne's Affidavit as Exhibit A. *See* Payne Affidavit ¶ 3.
4. Among other duties, Team Leaders assist DHS employed security staff and lower level LHC clinical staff in determining whether SVPs committed and/or detained at the Rushville TDF should have certain proposed visitors and photographs prohibited on the grounds that the visitors or photographs are counter-therapeutic. In particular, treatment staff scrutinize issues involving minors. *See* Payne Affidavit ¶ 4.
5. Defendant Payne has been trained to take a case-by-case approach in determining whether visitors or photographs are counter-therapeutic. In other words, a visitor of a certain age might appropriate for some SVPS but not others. At the same time, certain photographs might appropriate for some SVPS but not others. *See* Payne Affidavit ¶ 5.
6. In making these determinations, Defendant Payne has followed internal guidelines which are attached as Exhibit B-1. These guidelines were recently provided to residents (in May of 2009) in the form of a Memorandum signed by DHS Facility Director Larry Phillips. *See* Payne Affidavit ¶ 6.
7. Defendant Payne was taught and has observed, that if an SVP is know or believed to have sexually molested prepubescent children or minor teens, whether related to him or not, it might be counter-therapeutic for that resident to receive and keep photographs of similarly aged individual, regardless of whether the photographs are of fully clothed individual or they contain legally aged adults. *See* Payne Affidavit ¶ 7.
8. At the Rushville TDF, treatment staff constantly evaluate the appropriateness of visitors and photographs as staff becomes aware of additional victim disclosures which may result from treatment sessions, homework prepared by residents or disclosures made through other means. For example, if an SVP was committed to the Rushville facility for raping adult women but later disclosed that he had raped one or more young girls, staff may determine, in the exercise of their professional judgment, that it would be appropriate to confiscate photographs of young children and/or remove visitation privileges for young children. *See* Payne Affidavit ¶ 8.
9. Defendant Payne has examined Plaintiff..s Progress Notes and they identify the fact that staff explained to Plaintiff that the former treatment facility was reexamining prior allowed visitors as part of a facility wide reevaluation process. *See* Payne Affidavit ¶ 9.
10. In Defendant Payne..s experience at the Rushville TDF, and as a LCSW treating sexually violent persons at another facility, she has studied and learned that sexually violent persons often obsess over photographs of persons who are similar in age or looks to prior

3

victims to facilitate deviate fantasies and to engage in masturbatory fantasies. When a sexually violent person engages in such actives, this has a negative consequence as it serves to reinforce his deviant behavior and precludes him from engaging in appropriate sexual fantasies. *See* Payne Affidavit ¶ 10.

11. In Defendant Payne..s experience at the Rushville TDF, and as a LCSW treating sexually violent persons at another facility, she has studied and learned if a sexually violent person is allowed to engage in visits with persons who are similar in age or looks to prior victims, the individual in question may suffers negative repercussions which may tend to reinforce the individual..s deviant behavior and precludes said individual from learning and engaging in appropriate sexual fantasies. *See* Payne Affidavit ¶ 11.

12. On or about the Fall of 2007, Defendant Payne supervised Defendant Randall Smith informed her that he had received the subject photographs from DHS security staff. Payne Affidavit ¶ 12. Copies of the confiscated photographs are attached to Defendant Payne's Affidavit as Exhibit F.

13. At that time, Defendant Smith told Defendant Payne that Plaintiff..s prior Team Leader (Joe Proctor) had reviewed the photographs obtained by Defendant Smith and had tentatively determined that they were counter-therapeutic because one of the minors depicted in the photographs was similar in age to one of Plaintiff's victims. Payne Affidavit ¶ 13. See also Plaintiff..s Progress Notes authored by Randall Smith dated 10/22/07 (attached to Affidavit as Group Exhibit C). See also, Plaintiff's Grievance dated 10/22/07 and Grievance Examiner..s Response dated (Exhibit D-1) and Grievance dated 10/27/08 and Grievance Examiner..s Responses dated 01/23/08 and 02/25/08(Exhibit D-2).

14. Additionally, Defendant Payne subsequently reviewed Plaintiff..s clinical chart records (which included treatment records and records which identified the nature of his prior sex crimes and his victims) and the photographs at issue and she agreed with Team Leader Proctor's assessment that the photographs were counter therapeutic because one of the minors depicted in the photographs was similar in age to one of Plaintiff..s victims. For example, Plaintiff's predicate offense description explains how he fantasized about and molested a fully clothed minor. Payne Affidavit ¶ 14.

15. In the exercise of Defendant Payne..s professional judgment, she determined (as Defendant Smith..s supervisor) that it was proper to confiscate the photographs at issue and remove the visitation privileges for the minor in question given the nature of Plaintiff..s underlying sex offenses and disclosures provided in his various homework assignments. Her judgment was based, in part, on the fact that Plaintiff..s treatment records indicate that he has sexually molested minors (and admitted to these acts) and has completed certain homework assignments that identify continued deviant sexual thoughts regarding young children. Payne Affidavit ¶ 15.

16. While Defendant Payne understood that Plaintiff has claims that other staff had previously allowed him to keep his photographs and that the minor "T.H" had been placed on his approved visitor list at some point in the past (prior to Defendant Payne's employment), Defendant Payne does not believe that clinical staff at that time had the benefit of reviewing Plaintiff's recent treatment records when these determinations where made. In fact, she has not discovered any records approving the photographs and the

4

current policy requires staff to specifically label photographs as "approved" to document that they were in fact approved instead of being overlooked by security staff during routine inspections of resident rooms. Payne Affidavit ¶ 16.
17. Even if staff had been able to review these records and determined to allow the photograph, in Defendant Payne's judgment, it is not inappropriate for her to reconsider such a decision. Payne Affidavit ¶ 17.
18. Additionally, in the exercise Defendant Payne's professional judgment, she has determined that it is clinically significant that Plaintiff has gone to such lengths to obtain photographs and visitation rights with the minor "T.H." Defendant Payne reviewed Plaintiff's Progress Notes and they are replete with demands to return the photographs to him and to allow him to visit with the minor "T.H." See Group Exhibit E to Payne's Affidavit. Plaintiff's actions have led Defendant Payne to conclude that he is obsessed with the minor "T.H."as it appears that the minor "T.H." is the only minor that he has the means of interacting with. Payne Affidavit ¶ 18.
19. In the exercise Defendant Payne..s professional judgment, it was proper to confiscate the photographs at issue and remove visitation privileges for the minor in question given the nature of Plaintiff's underlying sex offenses involving minors, his disclosures provided in his various homework assignments and his apparent obsession over this minor. Payne Affidavit ¶ 19.

Discussion and Conclusion

The court finds the confiscation of the photographs of the minor and the denial of visitations of the minor does not constitute a substantial departure from accepted professional judgment, practice, or standards. Court review of actions taken by mental health professionals relating to the treatment of civilly committed individuals is controlled by the highly deferential professional judgment standard. *Youngberg v. Romeo*, 457 U.S. 307, 321-24 (1982). Under this standard, "[i]t is not appropriate for the courts to specify which of several professionally acceptable choices should have been made," rather, "the Constitution only requires that the courts make certain that professional judgment in fact was exercised." *Youngberg*, 457 U.S. at 321. "Liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id*. at 323 (emphasis supplied). This highly differential approach is justified because "a presumption of correctness ... is necessary to enable institutions of this type-often, unfortunately, overcrowded and understaffed-to continue to function." *Id*. at 324.

".[S]tates enjoy wide-latitude in developing treatment regimens." *Kansas v. Hendricks*, 521 U.S. 346, 368 n.4 (1997). Moreover, "[t]he Constitution does not command state officials to follow the majority view of a given professional association." *Allison v. Snyder*, 332 F.3d 1076, 1081 (7th Cir. 2003).

5

In a class action involving the SVP Act, the Court in *Hargett v. Adams* discussed the difficulties that staff face in treating sexually violent persons held under the SVP Act and held that the treatment program comported with professional judgment:

> 22. The types of chronic sex offenders who reside at the TDF are notoriously difficult to treat. They suffer from extreme and difficult-to-control sexual urges, which may have complicated biological, behavioral and cognitive causal factors. Many suffer from a variety of co-morbid problems that complicate the treatment picture, such as substance abuse, mood, and personality disorders. In addition, many patients at the TDF are reluctant to seek treatment and have an extensive history of reoffending. In short, this is a chronic, severely disturbed patient population with a multiplicity of serious and complex psychiatric difficulties. This is certainly not the typical outpatient "worried well" or depressed patient, who can be successfully treated with short-term cognitive-behavioral therapy and/or antidepressant medication.
>
> 23. Thus, the clinical staff at the TDF is faced with the unenviable competing tasks of providing adequate treatment at a pace to allow sufficient progress for potential release, while simultaneously ensuring that patients are not released prematurely into the community to reoffend. The latter task is not to be taken lightly, as the recidivism rates of sex offenders are tragically high. This, of course, is the principal rationale behind the SVP Act.
>
> 24. In light of these challenging tasks, the Court finds that the treatment program and delivery of services at the TDF adequately meet constitutional requirements.

*Hargett v. Adams*, 2005 WL 399300, *19 (N.D. Ill. 2005) (emphasis supplied). In a case involving pre-trial detainees, the Supreme Court has recognized that detainees "are not susceptible to easy solutions," and has held that administrators "should be accorded wide-ranging deference in the adoption and execution of the policies and practices that in their judgment are needed to preserve internal order and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). The same is true for civil detainees.

Defendants advise the court that their research has not uncovered any cases directly on point discussing whether the confiscation of photographs depicting clothed minors or the denial of visitation rights involving minors violates professional judgment where the plaintiff in question is a civilly committed/detained sexually violent person with a history of molesting minors. That said, in observing that "facilities dealing with those who have been involuntarily committed for sexual disorders are 'volatile' environments whose day-to-day operations cannot be managed from on high," the Seventh Circuit has held that sexually violent persons "may not

nickel and dime his way into a federal claim by citing small, incremental deprivations of physical freedom." *Thielman v. Leean*, 282 F.3d 478, 483-484 (7th Cir. 2002). The same holds true here with regard "incremental deprivations" related to confiscations of photographs and visitation privileges.

Additionally, the following authorities have upheld restrictions involving sexually violent persons. For example, the court in *Young v. Bass*, 2004 WL 765874 *5 (N.D. Ill. 2004) held that "government officials may still place certain restrictions on the rights of pretrial detainees [held under the SVP Act] because it has legitimate interests in managing the facility where an individual is detained." In *Kollyns v. Hughes*, 2006 WL 2716407, *2 (D. S.C. 2006) the court held that confiscation of sexually violent predator's hand-made female undergarments was constitutionally permissible:

> Defendants have provided supporting affidavits from the SCDMH's case manager . . . and Program Director . . . that indicate from their professional experience that cross-dressing is detrimental to the treatment of sexually violent predators, substantially increases the risk of reoffense and interferes with the other residents' treatment. The court finds that defendants' confiscation of plaintiff's female undergarments was legitimate given the institutional security issues and interference with the recovery goals of the program.

Finally, the court in *Simmons v. State of New Jersey*, 2006 WL 2040401 (D. N.J. 2006) filed a writ of habeas corpus arguing that he was improperly detained under New Jersey's sexually violent predator act. In affirming his commitment, the court noted that facility staff found "letter containing pictures of young children . . . in S.P.S's mail during routine property review", and that treatment staff relied on the predator's "lengthy history of illegal sexual activity with young boys and his ongoing problems in the STU" in determining that he "should remain committed for further treatment." *Id*. at *2. In making these observations, the court denied the predator's writ of habeas corpus on the various grounds that it raised.

Plaintiff's claims fail against the above authorities. First, these authorities demonstrate the difficult nature of the population at the Rushville TDF and the difficulties encountered when treating such a population. Second, applying these cases, these Defendants are entitled to summary judgment because their alleged conduct in determining that Plaintiff should be denied certain photographs of a minor and visitations privileges does not constitute "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323. As noted above, given Plaintiff's underlying history and pathology with regard to minors, it was appropriate to confiscate the photographs in question and deny visitation rights to the minor in question. While Plaintiff is free to pursue this case to the Supreme Court, it is not unreasonable to suggest that his obsession with these restrictions may very well demonstrate a counter-therapeutic obsession with this minor.

7

Third, Plaintiff has not supplied any reason to conclude that the choices made by the Defendants are so far outside the bounds of professional norms that they must be equated with no professional choice at all. Fourth, Plaintiff has not disclosed an expert (or any qualified individual for that matter) to counter the arguments contained herein. Accordingly, Plaintiff has failed to identify any admissible evidence which would demonstrate that the Defendants' conduct
constitutes such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment. *Youngberg*, 457 U.S. at 323.

Furthermore, Defendant Smith is entitled to summary judgment because he was not personally responsible for the decisions in question. Liability under 42 U.S.C. § 1983 is predicated on personal responsibility for the complained of conditions. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Here, Payne has testified that she, and not Defendant Smith, made the ultimate decision to confiscate the photographs at issue and to remove the minor from Plaintiff's approved visitor list. Accordingly, because Defendant Payne is the moving force behind the complained conduct, Defendant Smith is entitled to summary judgment[3]. The fact that Plaintiff repeatedly complained to Defendant Smith as demonstrated in Exhibit C to Defendant Payne's Affidavit does not entitle him to judgment against Defendant Smith simply because Defendant Smith did not provide him with the relief that he wanted. *See, e.g., Brewer v. Ray*, 2005 WL 1532599, *2 (W.D. Wis. 2005) ("Plaintiff argues that his First Amendment right to petition the government was violated by defendant Ray's handling of his inmate grievances. He was, however, allowed to file numerous inmate complaints as well as civil actions in this court. The First Amendment allows him to petition the government for redress but does not guarantee a certain result.")

Further, the Liberty Defendants are entitled to summary judgment on the basis of qualified immunity. Qualified immunity shields defendants against civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is designed to shield from civil liability all "but the plainly incompetent or those who knowingly violate the law," and "gives public officials the benefit of legal doubts." *Kernats v. O..Sullivan*, 35 F.3d 1171, 1175, 1177 (7th Cir. 1994) (affirming award of immunity in the context of a 12(b)(6) motion). The Liberty Defendants entitled to qualified immunity as the facts of this case do not demonstrate that a reasonable individual in their position would have clearly known that Plaintiff's constitutional rights were violated. The Liberty Defendants are entitled to qualified immunity notwithstanding the fact that they are employed by a contractor with the State of Illinois. While the Supreme Court has declined to provide qualified immunity

---

[3]Additionally, Defendant Payne's affidavit demonstrates that Defendant Smith obtained the photographs from DHS security staff -- not that he personally removed them from Plaintiff's room. Under these circumstances, it would be in appropriate to hold him liable for the complained of conduct.

privately employed prison guards where in *Richardson v. McKnight*, 521 U.S. 399 (1997), *Richardson* is limited to its narrow facts which involved a private contractor that ran an entire prison complex with little to no supervision from the government. *Payton v. Rush-Presbyterian St. Luke's Med. Center*, 184 F.3d 623, 631 (7th Cir. 1999). ([Richardson] answered the immunity question narrowly in the context in which it arose.) *Richardson* is distinguishable because it held that the private prisoner guards were not entitled to qualified immunity because the management of prisoners was historically not an exclusively public function. *Richardson*, 521 U.S. at 404-07.

Second, *Richardson* limited the denial of qualified immunity to the facts of the case which involved "a private firm, systematically organized to assume a major lengthy administrative task . . . with limited direct supervision by the government." *Id*. at 413. Ultimately, *Richardson* suggested that qualified immunity would be appropriate in cases where a contract employee is only "briefly associated with a government body, serving as an adjunct to government in an essential government activity, or acting under close official supervision." *Id*.

Here, qualified immunity is proper as the SVP Act serves a unique public function and a recent one at that. Significantly, the Illinois Supreme Court, in holding that the SVP Act legitimately "extend[s] the incarceration of criminal defendants beyond the time they would otherwise be entitled to release if those defendants are found to be 'sexually violent,'" noted that "substantial differences" exist between the SVP Act and the Illinois Mental Health Code and Developmental Disabilities Code ("Mental Health Code"). *In re Samuelson*, 727 N.E.2d at 237. *See also, Hargett*, 2005 WL 399300 at *19-*20. These facts demonstrate that the SVP Act serves a very unique public function, the involuntary detention and treatment of violent sex offenders, and that this public function has no counterpart in the private sector.

Qualified immunity is also warranted given the fact that DHS operates the Rushville facility pursuant to statute. *See, e.g.*, 725 ILCS 207/50(b) ("The Department shall operate the facility provided by the Department of Corrections under this subsection and shall provide by rule for the nature of the facility, the level of care to be provided in the facility, and the custody and discipline of persons placed in the facility.") Further, the SVP Act provides that DHS, not the Liberty Defendants or LHC, "provide[s] by rule for the nature of the facility, the level of care to be provided in the facility, and the custody and discipline of persons placed in the facility." See 725 ILCS § 207/50(b). No similar statutory framework existed in *Richardson*. Further, qualified immunity has been historically afforded to private doctors employed under contract with governmental agencies. For example, *Sherman v. Four County Counseling Center*, 987 F.2d 397 (7th Cir. 1993) awarded immunity to a private mental institution that had treated a mentally ill patient pursuant:

> Four County accepted and treated Sherman pursuant to court order
> and in accordance with the procedures set forth by Indiana law . . .
> . It seems clear that a state hospital that acted precisely
> as Four County did would be protected by qualified immunity.
> * * *

> We believe the public interest . . . for the detention and treatment
> of the mentally ill is best served by not exposing private facilities
> to liability for discretionary medical judgment made under court
> order.

Id. at 405-06. *See also, Young v. Murphy*, 90 F.3d 1225, 1234 (7th Cir. 1996); *Williams v. O..Leary*, 55 F.3d 320, 324 (7th Cir. 1995).

Finally, unlike *Richardson* where the Court held that private corporations have operated prisons going back to pre-colonial times, it is clear that the operation of the Rushville TDF to civilly detain of sex offenders after they have completed their prison terms constitutes is a relatively new undertaking. Accordingly, Plaintiff cannot (and does not) argue that LHC's limited role in providing treatment to civilly detain of sex offenders is akin to the operation of a privately run prison in *Richardson*.

Based on the foregoing, it is ordered:

1. Pursuant to Fed. R. Civ. P. 56(c), the remaining defendants, Randall Smith and Anita Payne's summary judgment motion [39] is granted.
2. The clerk of the court is directed to enter judgment in favor of all the defendants and against the plaintiff. Any pending matters are denied as moot, and this case is terminated, with the parties to bear their own costs.
3. If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).

Enter this 19th day of March, 2010.

**s\Harold A. Baker**

_____
Harold A. Baker
United States District Judge